Hale, J.
The following facts are either conceded or clearly proven:
The plaintiffs in error owned a building fronting on Euclid avenue, known as the King and Ubl Block. Extending from the basement of this building, under the sidewalk, are six vaults, .one of which is used for the reception *42 of coal to be used in the heating of the building. There is an opening in the side-walk 16 to 18 in diameter for the reception of coal into the vault, which, when not in use,is usually protected by an iron cover. Most of the building is occupied by lessees, but King and Uhl have the care of the hall-ways, stairs,elevators and basement,or at least that portion of the basement occupied by the boiler and heating apparatus. They furnish the heat for the entire building.
At the time of this transaction King and Uhl employed an engineer or fireman whose duties were to run the boiler and receive and receipt for the coal needed for that purpose. They also employed a man by the name of Babcock, whose conceded duties were to run the elevator and care for the halls and stair-ways.- Other employes, if any, had no part in this transaction and need not be noted.
The Zettelmeyer Goal Company had for several years furnished all the coal used by King and Uhl in heating the building. On the night of this accident the coal company had by its agents, under its arrangement with King and Uhl, delivered to them at that building a load of coal. The driver came to the building with the coal, and took the bill for the same to the fireman in the basement, who receipted for the same. The driver then returned to his wagon. The fireman went to the vault and assisted in the removal of the cover of the coal-hole; he did this at a signal from Babcock, then on the side-walk, who, after the cover had been loosened by the engineer, removed it from the hole for the receipt of the coal. Scantlings were kept in the vault, which were used to form a bridge from the street to the top of the curb, to prepare the way for the wagon to back up to the coal-hole. These the engineer passed out, either to the driver or Babcock, and they were used for the purpose intended. After the cover was removed and before the wagon was in place for dumping the coal, the defendant in error, passing along the sidewalk, stepped into the hole and was quite seriously injured.
*43 So far there was no]substantial”conflict in the testimony. Upon other issues, there was a ^conflict of testimony.
It was claimed on the trial, although not specifically so alleged in the pleadings, that the coal company had been put in the exclusive possession and control of the coal-hole under a contract with King andfUhl, by the terms of which it had assumed all responsibility for its care and the whole duty of protecting the public from^the dangers incident to its use, and that King and Uhl by^sucb contract were relieved from any'responsibility or duty to the public in its use for the purposes for which it wasjjtben used.
The only evidence given infsupport of the contract which it is claimed, thus exempted King and Uhl from responsibility, is found in the testimony of Mr. King, one of the plaintiffs in error, on pages 280-281 of the record. Mr. King, after stating that he made the arrangement for the purchase and delivery of the coal with^Mr. Zettelmeyer, was “then asked:
“What was the talk, if any, between you and Mr. Zettelmeyer about furnishing the coal for your vault, how to put it in, and what was said about it by him as the representative of that company?”
Answer. “Mr. Charles Zettelmeyer came to my office about the first of November, 1893, and we talked over the matter of furnishing coal, and finally came to an agreement n
Question. “What was said?”
Answer. “He said he would furnish coal at $1. 30 for slack coal delivered in the vault. I asked him how he would put it in the hole, seeing the coal-holes were so far from the curb-stone. He said they would bring a chute to run the coal from the wagon into the hole. I said, ‘There is danger of people tumbling into that hole when the chute is there, I’m afraid they are so far from the curb-stone.’ He asked me ‘How large is that vault?’ I told him it 'might hold a car-load and might not quite hold a car-load of ■coal. He said, ‘We will send two teams at the same time *44 when coal is brought, and one can watch the hole and the other unload, and vice versa.’ I says, ‘Go ahead, furnish-the coal. ’ ”
This is substantially all that was said by Mr.- King about the contract. It further appears from his testimony that at first the coal company did send two men in accordance with-that talk, but latterly omitted to do so, and much of the coal was delivered by one man.
This testimony of King was denied by Zettelmeyer, an officer of, and a witness for the coal company,
Upon the subject of this contract, after stating the claims-of exemption made by King and Uhl, the court charged:
“It is denied by the coal company that any such contract was made by them; but I say to you that the defendants King and Uhl would not be released from liability by reason of said contract, if such contract you find there was, if, under the rules I shall give you, you find that on the 24th day of November, 1896, the defendants King and Uhl' were negligent, and that such negligence of said defendants was the proximate cause of the injury to the plaintiff, and the plaintiff was not negligent, then I say to you that King and Uhl would be liable.”
The effect of this charge was, that no contract had been made between King and Uhl and the coal company, whereby they were released from such responsibility,
If the evidence fairly tended to prove a contract that would relieve King and Uhl from the duty which, in the absence of such contract, they owed to the public to guard those travelling upon the sidewalk from danger incident to the use of this coal-hole, permitted to be made in the sidewalk by the city authorities, then the charge relating to the subject of this contract was erroneous. It may well be doubted, however, whether King and Uhl could, by a contract, relieve themselves from the duty of guarding the public from the dangers incident to the use of this opening in the sidewalk, when 'jused for the purposes for which it was* then being used.
*45 If this hole was left open and unguarded, it was dangerous to those travelling upon the sidewalk, and the duty of guarding the public from such danger it is conceded was primarily upon King and Uhl. They were the owners of and in possession of the abutting property; the vault under the sidewalk was constructed by them and for their use; the permit to open into the vault through the sidewalk, was-given to them and was opened for their use. If it be granted that the contract of the coal company required it to deliver the coal in the vault, it could only be so delivered through this hole upon the premises of King and Uhl and for their use.
It is not analagous to those cases in which the entire premises are put into the possession of a lessee or the control of' an independent contractor for the purpose of repair or construction of some building or other structure upon the premises. It was, undoubtedly, the duty of the coal company to use ordinary care in the delivery of the coal, and whether the coal company is, in any way, liable or responsible to King and Uhl for their failure to perform that duty,, we are not now concerned or called upon to decide. But we are of the opinion that King and Uhl, notwithstanding-this contract, still owed a duty to properly guard and protect a traveler on the highway from the dangers incident to its use. We cite, upon this proposition; 66 Iowa, 223, Calder v. Smalley; 156 N. Y., 354, The Trustees of the Village of Canadaigua v. Foster. I refrain form citing other authorities to the point.
It is not our purpose to review and comment on the decisions of the supreme court of the state, which maybe said to aid in determining under, what circumstances the owner of a building can, by independent contract, relieve himself from such duty and-liability.
And without definitely determining whether such contract could be made in the situation of these parties, we are- *46 -satisfied that the evidence falls far short of establishing such a contract or tending in any substantial degree towards proving a contract having such effect.
Interpreting the evidence in the light of the circumstances in which the parties were placed, the purposes for ■which the opening in the sidewalk was being used at the •time, it had no tendency to establish a contract which would relieve King and Uhl from the duty to the public and their -liability to a passer on the sidewalk, who received an injury from the careless and negligent use of that opening. The defense that this duty had been shifted by King and Uhl, ■to the local company, under the contract between those parties, was not sustained, and there was no error in the charge of the court to the jury upon that subject.
Again, it fairly appears from this testimony that Babcock, an employe of King and Uhl, removed the cover from this hole after it had been loosened by the fireman, and that he then failed to properly guard it while the driver of the coal wagon backed his wagon on to the sidewalk.
The claim in behalf of the plaintiffs in error, however, is that Babcock at that time was acting without the scope of his employment, and that for any carelessness and negligence on his part, they are not responsible. In this connection, two complaints are made of the rulings of the court: First, it is claimed that the court erred in the rejection of testimony offered by the plaintiffs in error tending to establish the duties of Babcock under his employment and to -negative any knowledge of King and Uhl that he was performing or ever had performed any duties outside of those for which he was employed. While questions were asked, and to which objections were sustained, with a view of eliciting testimony upon this point, a review of the whole record will show that the witnesses to whom these questions were put, did testify fully upon this subject. And without reviewing each individual instance of which complaint is *47 made, we hold that there was no error of which the plaintiff in error can justly complain in the rulings upon the evidence, The effect of this ruling will be further considered in connection with the charge. Upon this subject of the scope of Babcock’s duties, the court said to the jury:
“ Was Henry Babcock on the evening the plaintiff was injured, in the employ of the defendants King and Uhl ? Was he, when he removed the covering from the coal-hole, acting within the scope of his employment? It is for you to determine from all the evidence in the case, whether or not he was so acting, and if you find that he was so acting within the scope of his employment at the time when plaintiff was injured, then for his acts the defendants King and Uhl would be liable. If he was not at said time so acting within the scope of his employment, then they would not be liable for his' acts. ”
And further, counsel for plaintiffs in error submitted to the court several requests which they asked to be given to the jury as a part of the charge. 'These requests were refused.
The ground of the complaint is, that the court had given the jury no guide by which to determine the fact whether Babcock was or was not acting within the scope of his employment at the time he assisted in the reception of the coal.
The charge was a correct statement of an abstract proposition of law, but, it is claimed, however, to be so general and so loosely stated as to be no guide to the jury in determining the facts of this case, and that this defect was ■remedied by the requests which have been given.
Suppose these propositions had been given in the charge of the court to the jury, and the jury had found¡¡that Babcock in all he did in and about this removal of that cover from the coal-hole was acting outside of the scope of his employment in no way binding King and Uhl, would that fact by any possibility relieve them from liability to the defendant in error? The duty of King and Uhl in the use of *48 the opening was a continuous affirmative one. Their negligence was not the result of acts done, but of acts omitted-to be done. The charge of negligence in the petition is in these words:
“Plaintiffs aver and charge it to be a fact that on or about the 25th day of November, 1896, at half-past five’ o’clock in the evening, said defendants, while said sidewalk was filled with people passing and re-passing thereon, removed the slide or covering from said main-hole in said side-walk in front of said block for the purpose of allowing the defendant, the Zettelmeyer Coal Company, to precipitate coal into said vault.”
So far no complaint of carelessness is made against the-defendant; but it is added:
“And carelessly, negligently and recklessly put up no sign and gave no notice that the same was open,and, without in any way guarding said opening or taking any precaution whatever to prevent passers over the sidewalk from slipping and falling therein, and still knowing it to be unsafe and dangerous from the crowded condition of said sidewalk and from the uncertain and insufficient light at the time and place, allowed and-caused the same to remain open without precaution or without any light or sign to indicate the dangers as aforesaid.”
No duty to the public was violated in opening the coal-hole for the purpose of delivering coal ídío that vault. It was permitted to be placed there for that purpose; but negligently omitting to properly guard it when so used, constituted the breach of duty complained of.
Some one represented King and Uhl in that transaction, or clearly should have done so. The coal company were employed to deliver to King and Uhl that coal, and into that vault and through that opening. And the effect of our holding as to the relations between King & Uhl and the coal company’is, that King and Uhl are responsible to passers on the sidewalk for the manner in which that work was done by the coal company. If Babcock had not been in *49 the employ of King and Uhl at all, and had been requested to'remove that cover by the driver of the coal wagon, and then guard the hole while the driver backed his load upon the sidewalk, King and Uhl would not be absolved from liability.
C. D. Pennewell, for Plaintiffs in Error.
H. H. Poppleton, and Billman & Billman, for Defendant in Error.
Again, if Babcock had been a mere interloper and, seeing the driver about to deliver the coal at that hole, had removed the cover with the knowledge of the driver, it would have been the driver’s duty to see that it was properly guarded, and his failure to do so would be the failure of King and Uhl. If the driver of the coal wagon sought or accepted the aid of Babcock in the work of delivering that coal, and injuries resulted to a traveler on the sidewalk from the negligent manner in which the work was done, King and Uhl were responsible. It was a failure on their part to protect the public from, the dangers incident to its use.
There was, in fact, no defense attempted in the case that could relieve King and Uhl from negligence in leaving that opening unguarded, except the one that the coal company was an independent contractor and alone responsible for the negligence in leaving the hole unguarded. Under the charge of the court, the jury determined that issue against the plaintiffs in error and, as we think, rightly.
With that issue found for the defendant in error, and on the undisputed facts, taken in connection with such findings, the defendant in error was entitled to a verdict.
It may be suggested that the jury based their verdict wholly on the negligence of'Babcock, and found that the-coal company was guilty of no negligence. It does not definitely appear on what theory the jury reached their verdict. They may have found a right verdict based upon wrong reasons, but, if the verdict was clearly right under the conceded facts of the case and such as have been properly determined by the jury against the plaintiffs in error, then we see no reason for disturbing the judgment.